UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

SUSAN RATCLIFF, individually　　　　　　　　　　CIVIL ACTION
and as representative of a class

VERSUS　　　　　　　　　　　　　　　　　　　　　NO. 08-718

MEDSOUTH RECORD MANAGEMENT, LLC　　　　　　　SECTION "F"

## ORDER AND REASONS

Before the Court are two motions: (1) the defendant's motion for summary judgment combined with its motion to dismiss; and (2) the plaintiff's cross-motion for summary judgment. For the reasons that follow, the defendant's motion for summary judgment is GRANTED, the defendant's motion to dismiss is DENIED as moot, and the plaintiff's motion is DENIED.

## Background

This putative class action lawsuit arises out of alleged overcharging for medical and billing records by a company that services record requests for medical providers.

In July 2007, after being injured in a car accident, Susan Ratcliff received medical treatment at Our Lady of the Lake Primary Care Physicians (Family Practice Associates) in Baton Rouge, Louisiana. She then sued the other driver and his insurer to recover for her personal injuries. She hired Brad M. Boudreaux to pursue her personal injury claim; Mr. Boudreaux requested, paid for, and received a certified copy of Ms. Ratcliff's medical and

1

billing records from Our Lady of the Lake Primary Care Physicians, through MedSouth Record Managment LLC.[1]

On September 29, 2008 Ratcliff sued MedSouth Record Management LLC in state court in Baton Rouge, seeking to represent a class consisting of:

> All individuals and legal entities who have paid to the Defendant sums invoiced by the Defendant that are beyond those charges authorized by La.R.S. 40:1299.96 for the production of "medical, hospital or other record[s]" within the State of Louisiana.

Ratcliff, on behalf of the putative class, asserts that MedSouth has improperly charged fees not authorized by statute and has accepted the overcharges in bad faith such that it must not only refund the excessive fees collected, but also asserts that MedSouth

---

[1] In pursuing her personal injury claim, on May 7, 2008 her attorney, Brad M. Boudreaux, requested a certified copy of records from Family Practice Associates related to her medical treatment, including billing records, pursuant to La.R.S. 40:1299.96. On May 19, 2008 MedSouth Record Management LLC mailed two separate "prebill" invoices to Mr. Boudreaux for the release of the requested records; the invoices consisted of invoices for handling fees for medical records, a handling fee for billing records, and charged $1.00 per page for copies of the first 25 pages of billing records; also, two separate certification fees were charged. The records sent to Mr. Boudreaux were separated into "medical records" and "billing records", which were invoiced separately. Because the medical records and billing records were separately produced, the $15.00 handling charge authorized by Louisiana law was billed twice, as was the $15.00 certification fee, and the $.42 for postage was also charged twice. Mr. Boudreaux paid the two invoices in the amounts of $53.34 (which was for the production of 22 pages of medical records) and $32.42 (which was for the production of two pages of billing records), and Ms. Ratcliff eventually reimbursed him at the conclusion of her personal injury claim by withholding the amount from the settlement disbursement.

2

must pay interest on the excessive fees charged.[2] In particular, Ratcliff contends that

> (a) MedSouth separately invoiced class members a $15 handling charge for "billing records", which MedSouth has wrongfully claimed to be separate from the "medical, hospital or other record[s]" under La.R.S. 40:1299.96
> (b) by improperly separating "billing records", MedSouth has charged $1.00 per page for the first 25 pages of "billing records" instead of the charge authorized by La.R.S. 1299.96
> (c) MedSouth has improperly charged class members a "certification fee" for routine certification of the records
> (d) MedSouth has charged the class members a per-page copy charge for production of a copy of the class members' written requests for records and the accompanying release authorizations
> (e) MedSouth has improperly charged class members a per-page copy fee for the production of a copy of a blank certification form provided by the class members for MedSouth's convenience, which is not part of the health care provider's "medical, hospital, or other records".

On November 4, 2008 MedSouth removed the lawsuit to the U.S. District Court for the Middle District of Louisiana, invoking the court's subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). The case was recently reassigned to this Court. Ratcliff and MedSouth have filed cross-motions for summary judgment addressing whether MedSouth charged fees not authorized by the version of La.R.S. 40:1299.96 that was

---

[2] Ratcliff contends that, if invoiced properly, the records should have only cost her a total of $40.34 -- which breaks down as follows: $15.00 handling charge plus $24.00 ($1 per page for 24 pages of records) plus $1.34 in postage -- instead of $85.76.

in effect when Boudreaux obtained Ratcliff's medical and billing records in May 2008. MedSouth also seeks to dismiss the state court petition on the ground that Ratcliff, the named plaintiff, is not the proper party plaintiff.

I.
*A.*

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted.[3] Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)). In considering a Rule 12(b)(6) motion, or Rule 12(c) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" See Martin K. Eby Constr. Co. v. Dallas Area Rapid

---

[3]The defendants' motion for partial dismissal and the plaintiff's motion to dismiss certain counterclaims appear to be grounded in Rule 12(c) insofar as the parties consider the allegations asserted in the defendants' answer and counterclaims and the plaintiff's answer to the counterclaim in addition to the complaint. Regardless, the standard for deciding a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is the same as the one for deciding a motion under Rule 12(b)(6). Gentilello v. Rege, 627 F.3d 540, 543-44 (5th Cir. 2010). "A motion brought pursuant to [Rule 12(c)] is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002)(citation omitted).

4

Transit, 369 F.3d 464 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)). But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982). Indeed, the Court must first identify pleadings that are conclusory and, thus, not entitled to the assumption of truth. Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). A corollary: legal conclusions "must be supported by factual allegations." Id. at 1950. Assuming the veracity of the well-pleaded factual allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief." Id.

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 129 S.Ct. at 1949 (2009))(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks, citations, and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 129 S. Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (citing Twombly, 550 U.S. at 557) (internal quotations omitted).

In deciding a motion to dismiss, the Court may consider documents that are essentially "part of the pleadings" -- that is, any documents attached to or incorporated in the plaintiffs' complaint that are central to the plaintiff's claim for relief. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)). Also, the Court is permitted to consider matters of public record and other matters subject to judicial notice without converting a motion to dismiss into one for summary judgment. See United States ex rel. Willard v. Humana Health Plan of Texas Inc., 336 F.3d 375, 379 (5th Cir. 2003). However, if the Court considers matters outside the pleadings that are neither part of the pleadings nor matters of public record, Rule 12(d) mandates that the Court treat the motion as one for summary judgment under Rule 56. Fed.R.Civ.P. 12(d). If the motion

is converted, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Id.

*B.*

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with

competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

## II.
### A.

This Court is called on to interpret Louisiana's statute applicable to charges health care providers can charge for copies of records pertaining to a patient's health care. The plaintiff contends that the statute has never permitted separate charges for production of billing records and has never authorized collection of certification fees, whereas the defendant submits that the statute has never, until recently, expressly prohibited the challenged charges and fees.

"It is well established that statutes are to be construed in such a manner as to effectuate their purpose." Smith v. Cajun Insulation, Inc., 392 So.2d 398, 400 (La. 1980)(citations omitted). Courts interpreting Louisiana statutes must be mindful of principles of judicial interpretation, as well as statutory rules for interpretation. As the state high court has observed:

> A statute's meaning and intent is determined after consideration of the entire statute and all other statutes on the same subject matter, and a construction

should be placed on the provision in question which is consistent with the express terms of the statute and with the obvious intent of the Legislature in its enactment of the statute. Where it is possible, the courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions. Moreover, when a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written. A construction of a law which creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the statute and will carry out the Legislature's intention. Ultimately, it is clear that the law provides that the statute be accorded a fair and genuine construction. A reasonable construction in light of the statute's purpose is what is required.

ABL Mgmt., Inc. v. Bd. of Supervisors of Southern Univ., 773 So.2d 131, 135 (La. 2000)(internal citations omitted); Moss v. State of Louisiana, 925 So.2d 1185, 1196 (La. 2006)("The rules of statutory construction are designed to ascertain and enforce the intent of the legislature."). Moreover:

> it is presumed that every word, sentence, or provision in a law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed.... As a result, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found. Finally, it is presumed that the legislature acts with full knowledge of well-settled principles of statutory construction.

Moss v. State of Louisiana, 925 So.2d 1185, 1196 (La. 2006).

Relevant statutory rules applicable here include:

- "No Section of the Revised Statutes is retroactive unless it is expressly so stated."

- La.R.S. 1:2.[4]
- "Words and phrases shall be read with their context and shall be construed according to the common and approved usage of language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning. The word 'shall' is mandatory and the word 'may' is permissive." La.R.S. 1:3.
- When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit. La.R.S. 1:4.

*B.*

Mindful of these statutory interpretation principles, the Court first considers the language of the version of La.R.S. 40:1299.96 that was in effect at the time Ratcliff's counsel requested and paid for her medical and billing records:

§ 1299.96. Health care information; records

A. (1) Each health care provider shall furnish each patient, upon request of the patient, a copy of any information related in any way to the patient which the health care provider has transmitted to any company, or any public or private agency, or any person.
(2)(a) Medical records of a patient maintained in a health care provider's office are the property and business records of the health care provider.
(b) Except as provided in R.S. 44:17, **a patient or his legal representative**, or in the case of a deceased patient, the executor of his will, the administrator of his estate, the surviving spouse, the parents, or the children of the deceased patient, or, after suit has been

---

[4]Accord La.C.C. art. 6 ("In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.").

10

> instituted, the defense counsel or the defense insurance company **seeking any medical, hospital, or other record relating to the patient's medical treatment, history, or condition, either personally or through an attorney, shall have a right to obtain a copy of such record upon furnishing a signed authorization and upon payment of a reasonable copying charge**, not to exceed one dollar per page for the first twenty-five pages, fifty cents per page for twenty-six to five hundred pages, and twenty-five cents per page thereafter, **a handling charge** not to exceed fifteen dollars for hospitals, nursing homes, and other health care providers, **and actual postage**. The individuals named herein shall also have the right to obtain copies of patient X-rays, microfilm, and electronic and imaging media, upon payment of reasonable reproduction costs and a handling charge of twenty dollars for hospitals and ten dollars for other health care providers. In the event a hospital record is not complete, the copy of the records furnished hereunder may indicate, through a stamp, coversheet, or otherwise, that the record is incomplete....

La.R.S. 40:1299.96 (emphasis added).

It is undisputed that MedSouth, which produces records on behalf of health care providers, is regulated by La.R.S. 40:1299.96. See Smart Document Solutions, LLC v. Miller, 970 So.2d 49 (La.App. 3 Cir. 10/31/07). The parties dispute centers on whether or not MedSouth charged fees in violation of the version of La.R.S. 40:1299.96 that was in effect at the time Ratcliff requested her records. MedSouth contends that it is entitled to judgment as a matter of law because the statute did not, until recently, prohibit it from either producing billing records separately from other medical records or prohibit it from charging a "certification fee". Ratcliff, on the other hand, contends that she is entitled to judgment as a matter of law that La.R.S.

40:1299.96 has at all times prohibited MedSouth from producing billing records separately from other records concerning a patient's medical treatment and that the statute also prohibited MedSouth from collecting "certification fees". Applying the clear words of the statute in effect at the time Ratcliff made her records request, the Court disagrees.

This statute, originally enacted in 1979, by its terms, regulates the provision of copies of health care records and limits the fees that can be charged for their provision. Simply put, it "permits release of a patient's medical records by a health care provider upon presentation of written authorization and payment of copying and handling charges." Moss v. State of Louisiana, 925 So.2d 1185, 1197 n.6 (La. 2006). The statute has been amended several times, including in 2001 and 2003 to raise the handling charge and to make $15.00 handling charge applicable across the board to production of records from all healthcare providers. The statute was amended by Act 763 in July 2008 to clarify the right to obtain records after a "claim" has been made in addition to after a "suit" has been filed; Act 763 also added to (A)(2)(b) the following sentence, which is relevant to the plaintiff's claim here: "If requested, the health care provider shall provide the requestor, at no extra charge, a certification page setting forth the completeness of records on file." By Act 740 in 2010, the legislature amended the statute by rewriting (A)(2)(b) to provide:

(i) Except as provided in R.S. 44:17, a patient or his legal representative, or in the case of a deceased patient, the executor of his will, the administrator of his estate, the surviving spouse, the parents, or the children of the deceased patient, or after a claim has been made, the insurance company or its counsel, or, after suit has been instituted, defense counsel or a defendant seeking any treatment record, including but not limited to any medical, hospital, invoice or billing statement, or other record relating to or generated as a result of or in connection to the patient's medical treatment, history, or condition, either personally or through an attorney, shall have a right to obtain a copy of the entirety of the records in the form by which they are generated, except microfilm, upon furnishing a signed authorization. If the original treatment records are generated, maintained, or stored in paper form, copies shall be provided upon payment of a reasonable copying charge, not to exceed one dollar per page for the first twenty-five pages, fifty cents per page for twenty-six to three hundred fifty pages, and twenty-five cents per page thereafter, a handling charge not to exceed twenty-five dollars for hospitals, nursing homes, and other health care providers, and actual postage. If treatment records are generated, maintained, or stored in digital format, copies may be requested to be provided in digital format and charged at the rate provided by this Item; however, the charges for providing digital copies shall not exceed one hundred dollars, including all postage and handling charges actually incurred. If requested, the health care provider shall provide the requestor, at no extra charge, a certification page setting forth the extent of the completeness of records on file. In the event a hospital record is not complete, the copy of the records furnished shall indicate, through a stamp, coversheet, or otherwise, the extent of completeness of the records. Each request for records submitted by the patient or other person authorized to request records pursuant to the provisions of this Subparagraph shall be subject to only one handling charge, and the health care provider shall not divide the separate requests for different types of records, including but not limited to billing or invoice statements. The health care provider shall not charge any other fee which is not specifically authorized by the provisions of this subparagraph, except for notary fees and fees for expedited requests as contracted by the

parties.[5]

Thus, the parties agree that this newer version of the statute expressly includes in its scope along with medical records, invoices and billing statements; that it also expressly provides that records requests shall be subject to only one handling charge; and, finally, that it expressly forbids (with two exceptions) charging any other fee that is not specifically authorized by the applicable Subparagraph. However, the parties dispute the legislative implication of the amendments that have been passed since the plaintiff requested and received her records. Even though the parties seem to agree that the amendments do not apply retroactively,[6] the parties dispute whether the version of the statute that was in effect in May 2008 prohibited MedSouth from (1) separately producing and charging Ratcliff for billing records and medical records and (2) charging a certification fee.

The Court finds that the version of the law in effect in May 2008 clearly and unambiguously permitted Ratcliff to obtain records relating to her medical treatment once she paid a handling fee, a specified copying charge, and actual postage. And the statute did not, at that time, forbid MedSouth from imposing a charge for

---

[5] This subparagraph was recently amended again by Act 125 during the 2011 Legislative Session.

[6] Indeed, neither side suggests that the amendments to the statute were not substantive; substantive changes to legislation apply prospectively only. See Harrison v. Otis Elevator Co., 935 F.2d 714, 719 (5th Cir. 1991)(citation omitted).

certification. Nor did the statute in effect at that time forbid separately producing records and charging the relevant copying, handling, and postage fees. In fact, the statute in effect at the time of Ratcliff's request was silent as to certification and, thus, did not restrict or limit the imposition of a fee for this service. Because the statute clearly did not by its terms expressly (or even impliedly) forbid the charges imposed by MedSouth, no further interpretation in search of the legislature's intent may be made. See La.C.C. art. 9.

Ratcliff's arguments are unpersuasive -- she would have this Court engage in statutory interpretation when the words of the statute are clear and unambiguous. There is no dispute that the law allowed MedSouth to charge a specific, reasonable copying charge, a $15 handling charge, and actual postage for "medical, hospital, or other record[s] relating to the patient's medical treatment, history, or condition". The plaintiff contends that "medical, hospital, or other record relating to the patient's treatment, history, or condition" is broad enough to encompass billing records. Even if the Court accepts the plaintiff's argument that billing records are included within the scope of the types of items the statute identified, Ratcliff fails to persuade just how the terms of the statute silently forbid separate

production of similar (but perhaps different) types of records.[7]

It is true, as the plaintiff points out, that the statute by its terms (at the time the services were rendered) did not expressly permit separate charges for production of billing records and did not expressly authorize the collection of certification fees. However, this falls far short of suggesting that such practices, nowhere mentioned, were prohibited. The Court applies the statute as written. The statute as written cannot be interpreted to forbid charges for services not mentioned (certification), and cannot be interpreted to forbid records production practices, no matter how unscrupulous the plaintiff suggests that they are; they were not mentioned in the statute or included in some catch-all limitation such as "no other fees may be charged for records requests." Indeed, a later version of the statute expressly forbids the billing practices the plaintiff challenges.[8] The Court will not apply retroactively substantive

---

[7] The Court notes that even her lawyer singled out "bills" in submitting his request. When Ratcliff made her records request, by letter, she requested "a CERTIFIED copy of any and all medical records, a copy of the medical file, a copy of any and all medical bills, and any information whatsoever, which you have in your possession pertaining to Susan Ratcliff" and she also requested, by form, "ANY AND ALL Records, Materials, Bills."

[8] In fact, if the Court accepted the plaintiff's invitation to engage in statutory interpretation, the Court would apply this, among other principles, in ascertaining legislative intent: Where a new statute is worded differently from the preceding statute, it is presumed that the legislature intended to change the law. La.R.S. 12:177(C). Of course, this would not support adopting the interpretation advanced by the plaintiff.

16

amendments absent the state legislature's express invitation to do so.

At the time services were rendered, La.R.S. 40:1299.96 did not prohibit the fees that MedSouth charged Ratcliff. Accordingly, MedSouth's motion for summary judgment is GRANTED, and the plaintiff's cross-motion for partial summary judgment is DENIED. MedSouth's motion to dismiss is DENIED as moot. The plaintiff's case is hereby dismissed.

New Orleans, Louisiana, October 5, 2011

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE